**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

STEFANIE CRUMRINE,

          Plaintiff,

vs.

DOW AGROSCIENCES, L.L.C.;
AGRIGENETICS, INC.; and JAY
BARLOW,

          Defendants.

No. C 14-3071-MWB


**MEMORANDUM OPINION AND
ORDER REGARDING THE
PARTIES' MOTIONS IN LIMINE**

***FILED UNDER SEAL***

———————————————

**TABLE OF CONTENTS**

I.    **INTRODUCTION**..............................................................................2

II.   **LEGAL ANALYSIS** ......................................................................4
     A.   *Admissibility In Light Of Remaining Claims*.................................4
     B.   *Relevance Vs. Prejudice*..............................................................9
     C.   *Admissibility Of The Challenged Evidence* ................................. 12
          1.   *The challenges to evidence of dismissed claims* ................... 12
               a.   *The fact that other claims were dismissed*.................. 13
               b.   *The substance of the dismissed claims*....................... 15
          2.   *Offers of settlement* ...................................................... 21
          3.   *Injuries from pre-retaliation conduct*................................ 21
          4.   *Lay testimony on emotional distress* ................................. 22
          5.   *Evidence of corporate status* ........................................... 25
          6.   *Evidence from administrative proceedings* ......................... 27

III.  **CONCLUSION** ............................................................................ 30

In this case, plaintiff Stefanie Crumrine originally asserted a variety of state-law and federal claims, but she is proceeding to trial only on her claims of retaliation for complaining about sexual harassment and sexual discrimination in violation of Title VII and the Iowa Civil Rights Act (ICRA). The case is now before me on the parties' July 19, 2016, Motions In Limine (docket nos. 52 and 53) in anticipation of a jury trial set to begin August 31, 2016. Defendants Dow AgroSciences, L.L.C., AgriGenetics, Inc., and Jay Barlow seek to exclude five categories of evidence, while Crumrine seeks to exclude two categories of evidence.

## I.     INTRODUCTION

In her November 10, 2014, Amended Complaint (docket no. 4), Crumrine alleges that she started working for Dow AgroSciences and AgriGenetics in July 2010 as a warehouse manager and lab supervisor and that, during her employment, she was supervised by Jay Barlow, who was a production leader. She alleges, in pertinent part, that Barlow and a co-worker, Jeff Fineran, subjected her to sexual harassment; that Barlow also discriminated against her on the basis of her sex and pregnancy; that she complained about such harassment and discrimination to various managers and to the defendants' human resources department; that Barlow retaliated against her; and that she was eventually fired on October 21, 2013.

In her Amended Complaint, Crumrine asserted the following claims: In Count I, a claim of "discharge in violation of public policy [for] reporting unsafe working conditions"; in Count II, a claim of "violations of the Iowa Civil Rights Act [by] harassment, discrimination & retaliation," because of sex, pregnancy, and disability; in Count III, a claim of "violation of the Equal Pay Act"; in Count IV, a claim of "violations of Title VII of the Civil Rights Act of 1964," based on harassment because of sex,

discrimination because of pregnancy and sex, and retaliation for complaining about such harassment and discrimination; in Count V, a claim of "violations of the Americans with Disabilities Act"; and, in Count VI, a claim of "blacklisting." On April 22, 2016, however, the parties filed a Stipulation Of Partial Dismissal (docket no. 34) stipulating to dismissal of Crumrine's claims in Count I, the part of Count II alleging harassment and discrimination in violation of the ICRA, Count III, the part of Count IV alleging harassment and discrimination in violation of Title VII, Count V, and Count VI. The parties stipulated that the dismissal of these claims would have "no effect" on Crumrine's claims of retaliation in violation of the ICRA in Count II and retaliation in violation of Title VII in Count IV. This case is set for a jury trial on Crumrine's remaining claims to begin on August 31, 2016.

On July 19, 2016, the defendants filed their Resisted Motions In Limine Nos. 1, 2, 3, 4, and 5 (docket no. 52) seeking exclusion of the following categories of evidence: (1) evidence and testimony regarding Crumrine's dismissed claims; (2) evidence and testimony regarding Crumrine's personal injury, mental health condition, or emotional distress purportedly caused by work matters prior to the alleged retaliation; (3) lay witness testimony regarding the cause or extent of Crumrine's personal injury, mental health conditions, or emotional distress; (4) evidence of corporate status information about Dow and AgriGenetics; and (5) evidence from Crumrine's ICRA, EEOC, and/or Iowa Workforce Development (IWD) administrative files and proceedings. Also on July 19, 2016, Crumrine filed her Motion In Limine (docket no. 53) seeking exclusion of the following two categories of evidence: (1) offers of settlement; and (2) dismissal of other legal claims. Crumrine filed her Resistance To Defendants' Motion[s] In Limine (docket no. 56) on August 2, 2016, and the defendants filed a Reply (docket no. 58) on August 4, 2016. The defendants filed their Resistance To Plaintiff's Motion In Limine (docket no. 57) on August 4, 2016.

The defendants requested oral arguments on their Motions In Limine and on Crumrine's Motion In Limine. I do not find oral arguments to be necessary or a good use of the court's and the parties' resources, however, in light of the issues raised and the time remaining before trial. Therefore, the request for oral arguments is denied.

## II.    LEGAL ANALYSIS

### A.    Admissibility In Light Of Remaining Claims

All of the evidentiary challenges are in the context of a trial of Crumrine's remaining federal and state claims of retaliation for complaining about sexual harassment and discrimination because of her sex and pregnancy. Thus, it will be instructive to summarize the elements that Crumrine must prove to win on her retaliation claims.

The Eighth Circuit Court of Appeals and the Iowa Supreme Court have repeatedly recognized that retaliation claims under Title VII and the ICRA are interpreted the same way. *See, e.g., EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 693 (8th Cir. 2012) ("'Consistent with our precedent, the district court concluded that the [ICRA] is interpreted in the same way as Title VII.'" (quoting *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 416 n.2 (8th Cir. 2010))); *Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 750 (Iowa 2006) (identifying the same elements for a retaliation claim under Title VII and the ICRA); *McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005) (observing, in a case involving retaliation claims under state and federal law, "Because the ICRA is in part modeled after Title VII, we have traditionally looked to federal law for guidance in interpreting it."). Thus, here, I will only summarize the federal law applicable to Crumrine's claims.

The Eighth Circuit Court of Appeals has explained,

> To establish a retaliation claim under Title VII, an employee must show: (1) she engaged in protected conduct;

(2) a reasonable employee would have found the retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir.2011).

*Musoff v. J.C. Penny Co., Inc.*, 773 F.3d 916, 918 (8th Cir. 2014); *see also Elkharwily v. Mayo Holding Co.*, 823 F.3d 462, 470 (8th Cir. 2016) (describing these as the elements of a *prima facie* case of retaliation, adding that the plaintiff ultimately bears the burden "'to prove that the [employer's] proffered reason is merely a pretext and that retaliatory animus motivated the adverse action'" (quoting *Pedersen v. Bio-Med Applications of Minn.*, 775 F.3d 1049, 1054 (8th Cir. 2015)).

As part of the first element, a plaintiff must show, *inter alia*, that she had a good faith, reasonable belief that the underlying conduct that she complained about violated Title VII. *See Brannum v. Missouri Dep't of Corr.*, 518 F.3d 542, 547–49 (8th Cir. 2008). In this case, however, the defendants state that they are willing to stipulate that Crumrine's internal complaint about *Fineran's* alleged harassment was made in good faith based on an honestly held belief that she was opposing discriminatory conduct. *See* Defendants' Brief in Support Of Their Resisted Motions In Limine Nos. 1, 2, 3, 4, and 5 (docket no. 52-1), 8, n.1.[1] In their opening brief, the defendants never expressly made such an offer to stipulate as to the good faith of Crumrine's complaints about *Barlow's*

---

[1] The defendants suggest the following stipulation, if their Motion In Limine No. 1, concerning evidence of prior claims, is granted:

> Plaintiff's case does not pursue a discrimination claim against Defendants, and Defendants dispute that any discrimination occurred. However, the parties have stipulated that when Plaintiff complained during her employment *about alleged discrimination*, she did so based on her good faith belief that she was opposing unlawful conduct.

(Emphasis added).

alleged harassment and discrimination. In their Reply, however, the defendants expressly argue that their proposed stipulation is not limited to one particular Dow employee or one incident of alleged discrimination or harassment, but covers all complaints that Crumrine made regarding any alleged discrimination during her employment, including her allegations about Barlow. I agree.

Nevertheless, I do not find that the proffered stipulation precludes submitting the "good faith and reasonableness" issue to the jury. In another case, the defendants made a similar, but *unilateral and unconditional*, representation, both at summary judgment and before trial, that they had not and would not challenge the good faith or reasonableness of an employee's belief that a superior had sexually harassed her. *Scott v. City of Sioux City, Iowa*, 96 F. Supp. 3d 876, 881 (N.D. Iowa 2015) (order regarding pre-trial evidentiary motions); *Scott v. City of Sioux City, Iowa*, 68 F. Supp. 3d 1022, 1043 (N.D. Iowa 2014) (order on summary judgment). In that case, I agreed with the defendants that whether or not the employee had such a good faith, reasonable belief that the conduct she was complaining about was sexual harassment should not even be submitted to the jury. *Id.* Here, however, the defendants have not made a *unilateral and unconditional* representation that they will not contest at trial whether Crumrine had a good faith, reasonable belief that she was complaining about harassment and discrimination by both Fineran and Barlow; rather, the defendants offer only a stipulation conditioned upon the exclusion of all evidence relating to Crumrine's dismissed claims. Thus, the question of whether Crumrine had such a good faith, reasonable belief that she was being harassed or discriminated against remains an issue for the jury to determine.

Also, Crumrine has argued that evidence about the conduct underlying her dismissed harassment and discrimination claims may be relevant to issues *besides* whether she had a good faith, reasonable belief that she was being harassed or discriminated against, as an element of her retaliation claim. Thus, even if the defendants' proffered

stipulation were unconditional and might remove the "good faith reasonable belief" element from the jury's consideration, the stipulation would not preclude evidence about the conduct underlying Crumrine's dismissed claims.

As to the second element of a retaliation claim, "a retaliatory action is materially adverse if it would likely dissuade a reasonable worker from engaging in protected conduct." *Chavez-Lavagnino v. Motivation Educ. Training, Inc.*, 767 F.3d 744, 749 (8th Cir. 2014) (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68-69 (2006)). This element turns on the reaction of an "objectively reasonable employee" to the allegedly retaliatory action, not the plaintiff's own reaction. *See Fanning v. Potter*, 614 F.3d 845, 850 (8th Cir. 2010) (rejecting a retaliation claim where "an objectively reasonable employee" would not have found the action at issue sufficient to dissuade her from making a charge of discrimination). Thus, the nature of the allegedly retaliatory action, viewed objectively, is critical to proof of a retaliation claim.

As to the third element, Crumrine must prove that her complaints of sexual harassment and/or sex and pregnancy discrimination were the "but-for cause" of her discharge. *See University of Texas Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, ___, 133 S.Ct. 2517, 2534 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). This means that Crumrine must prove that her protected conduct was "'a determinative—not merely motivating—factor' in [the defendants'] actions." *Robinson v. American Red Cross*, 753 F.3d 749, 756 (8th Cir. 2014) (quoting *Tyler v. University of Arkansas Bd. of Trs.*, 628 F.3d 980, 985 (8th Cir. 2011)). "But-for" causation requires further examination.

A "mere coincidence of timing" between allegedly protected conduct and allegedly retaliatory action is not enough to establish but-for causation, but, conversely, a "gap"

in time between allegedly protected conduct and allegedly retaliatory action "'weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint.'" *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1036-37 (8th Cir. 2016); *see also Jain v. CVS Pharm., Inc.*, 779 F.3d 753, 760 (8th Cir. 2015) (quoting *Shanklin v. Fitzgerald*, 397 F.3d 596, 604 (8th Cir. 2005)) (describing "almost one year" as a "lengthy delay" between the protected conduct and the allegedly retaliatory action); *Musolf*, 773 F.3d at 919 ("The time-lag [of seven months] between [the plaintiff's] complaints and [adverse action] creates a challenge for [the plaintiff] to establish the causal link."); *Robinson*, 753 F.3d at 756 ("The more time that elapses between the two events, however, the weaker the inference of causation. Any inference of causation evaporates if the adverse action occurs months after the protected activity. In such cases a plaintiff must present additional evidence of a causal link, which can include escalating adverse and retaliatory action." (internal quotation marks and citations omitted)). Thus, something in addition to temporal proximity is required to demonstrate "but-for" causation between allegedly protected activity and allegedly retaliatory action. *Id.* Such additional evidence is often found in the conduct of the alleged retaliator in response to the plaintiff's report of misconduct. *See, e.g.*, *Ludlow v. BNSF Ry. Co.*, 788 F.3d 794, 802 (8th Cir. 2015) (applying Title VII standards to a claim under a state fair employment practices act and finding "strong evidence" that the alleged retaliators "harbored retaliatory animus against [the plaintiff] for triggering and pursuing a forgery investigation that shed negative light on the [plaintiff's] department and could cost [one of the harasser's] his job").

"But-for" causation does not require "sole causation," because the Supreme Court has reiterated that a cause need not work in isolation to be a but-for cause. *Burrage v. United States*, ___ U.S. ___, ___, 134 S. Ct. 881, 888 (2014) ("Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death

even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived."); *see also Guessous v. Fairview Property Invests., L.L.C.*, ___ F.3d ___, ___, 2016 WL 3615780, *6 (4th Cir. July 6, 2016) (using *Burrage* to explain but-for causation in a discrimination and retaliation case under § 1981 and Title VII); *Leaf v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013) (concluding that the district court had improperly dismissed the plaintiffs' claims as asserting only mixed-motives where the plaintiffs alleged discriminatory failure to hire on the basis of both age and disability, because "'but-for cause' does not mean 'sole cause'" under the ADEA, ADA, or *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009)). Thus, the fact that Crumrine originally alleged several other claims does not necessarily defeat her claim that retaliation was the but-for cause of her discharge or other injuries.

Again, the admissibility of all of the evidence challenged in the parties' motions in limine must be considered in light of what Crumrine must prove to win on her remaining claims of retaliation.

## B.    *Relevance Vs. Prejudice*

The majority of the parties' challenges to specific evidence are based on—or can be resolved on the basis of—the balance of the probative value of that evidence against its potential for unfair prejudice. Consequently, I will summarize, here, relevance and prejudice standards for admissibility.

Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "(a) . . . has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not. Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> The court may exclude relevant evidence if its
> probative value is substantially outweighed by a danger of one
> or more of the following:  unfair prejudice, confusing the
> issues, misleading the jury, undue delay, wasting time, or
> needlessly presenting cumulative evidence.

FED. R. EVID. 403.  The Eighth Circuit Court of Appeals "give[s] great deference to the district court's Rule 403 determinations." *United States v. Battle*, 774 F.3d 504, 514 (8th Cir. 2014); *United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) ("We review the district court's decision not to exclude evidence under Rule 403 for an abuse of discretion."); *United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007) ("Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion."  (citing *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175 (2006))).

More specifically, as to Rule 403, the Eighth Circuit Court of Appeals has explained,

> [U]nder Rule 403, the [challenged evidence's] probative value
> must be *substantially* outweighed by *unfair* prejudice.
> "Evidence is not unfairly prejudicial because it tends to prove
> guilt, but because it tends to encourage the jury to find guilt
> from improper reasoning.  Whether there was unfair prejudice
> depends on whether there was an undue tendency to suggest
> decision on an improper basis." *United States v. Farrington*,
> 499 F.3d 854, 859 (8th Cir. 2007) (quotations omitted).

*Muhlenbruch*, 634 F.3d at 1001 (emphasis in the original); *Myers*, 503 F.3d at 681 ("Rule 403 'does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case.  The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.'" (quoting *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30 (1983)).  The Advisory Committee Notes to Rule 403 explain that a decision on an

"improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Bell*, 761 F.3d 900, 912 (8th Cir. 2014). Unfairly prejudicial evidence, inviting a decision on an improper basis, includes evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)); *accord United States v. Young*, 753 F.3d 757, 768-69 (8th Cir. 2014) ("[T]he district court violated Federal Rule of Evidence 403 because the testimony was so inflammatory that its resulting unfair prejudice outweighed its probative value.").

When evidence may otherwise be inadmissible pursuant to Rule 403, the Eighth Circuit Court of Appeals and the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of that evidence may mitigate potential prejudice from such evidence and allow it to be admitted. *See, e.g, Valadez v. Watkins Motor Lines, Inc.*, 758 F.3d 975, 982 (8th Cir. 2014) ("To the extent [the parties] were concerned about improper prejudice, a limiting instruction would have addressed those concerns." (citing FED. R. EVID. 105)); *United States v. Cowling*, 648 F.3d 690, 699 (8th Cir. 2011) ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."); *United States v. Young*, 644 F.3d 757, 761 (8th Cir. 2011) (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose). The court has also recognized that limiting the amount of evidence, while excluding evidence that might prejudicially divert the jury's attention from the issues in the case, also mitigates any

potential for unfair prejudice.  *See United States v. Lemon*, 239 F.3d 968, 972 (8th Cir. 2001) (holding that, where the district court admitted a limited amount of gang-related evidence that was relevant to the defendant's "mere presence" defense, but excluded evidence of his drive-by shooting conviction, which might have prejudicially diverted the jury's attention from the constructive possession issues central to the case, the district court had not abused its discretion in admitting the limited gang-related evidence).

With the elements of Crumrine's remaining claims and these evidentiary standards in mind, I turn to consideration of the specific evidence challenged in the parties' motions in limine.

### C.       Admissibility Of The Challenged Evidence

#### 1.       The challenges to evidence of dismissed claims

Crumrine and the defendants both challenge evidence of dismissed claims. Crumrine's challenge, however, is limited to "[e]vidence or argument regarding the fact that [she] initially brought additional legal claims against Defendants," on the ground that this fact is irrelevant.  She expressly "does not seek exclusion of the facts which gave rise to these dismissed claims."  Plaintiff's Motion In Limine (docket no. 50), 1-2.  In contrast, the defendants seek exclusion of "evidence of, testimony about, and reference to the substance of . . . Crumrine's dismissed claims."  Defendants' Resisted Motions In Limine (docket no. 52), 1.  In their supporting brief, the defendants make clear that they believe that Crumrine "should not be allowed to present evidence of her underlying sexual harassment complaint or the details of any other claim that has now been dismissed," such as "facts about [Crumrine's] pregnancy, differential pay, or environmental safety assertions, details about her health and disability conditions and treatments, or other background information underlying purported complaints of discrimination."

Defendants' Brief In Support Of Their Resisted Motions In Limine Nos. 1, 2, 3, 4, and 5 (docket no. 52-1), 6.

### a. The fact that other claims were dismissed

Crumrine argues that evidence or argument regarding the fact that she initially brought additional legal claims against the defendants is irrelevant and inadmissible under Federal Rules of Evidence 401 and 402. She contends that such evidence serves no purpose other than to make the improper suggestions to the jury that she is litigious or that her claims are disingenuous. She argues that such evidence would, therefore, be unfairly prejudicial to her, and would require a "mini-trial" about claims that have been dismissed, causing needless delay, confusion, and waste of judicial resources. In response, the defendants argue that the fact that Crumrine "took a kitchen sink approach in litigation" is relevant and should be admitted, even though they seek to exclude any *facts* supporting her dismissed claims. More specifically, they argue that the fact that Crumrine asserted that Barlow and others discriminated against her on the basis of sex, pregnancy, and disability is (a) probative on her remaining claims of retaliation, (b) material to the causation standards applicable to her Title VII and Iowa Civil Rights retaliation case, and (c) admissible to undermine her claim that the damages she posits were caused by conduct intended to punish her for her prior internal complaints, because they are inconsistent with her court statements that she was harmed by sex, pregnancy, or disability discrimination.

I will assume, for the sake of argument, that the fact that Crumrine brought, then dismissed, other claims is probative on the issues to which the defendants point. Nevertheless, I conclude that evidence of the fact that Crumrine initially brought other claims is unfairly prejudicial. *See* FED. R. EVID. 403. The prejudicial effect is particularly apparent, because, as noted above, proof of "but-for" causation does not require proof of "sole" causation, but the defendants' argument for admissibility seems

to be premised on the two causation standards being identical. *See Guessous, L.L.C.*, ___ F.3d at ___, 2016 WL 3615780 at *6; *Leaf*, 731 F.3d at 415. Thus, evidence of dismissed claims invites confusion on the causation requirement.

Also, as the Eighth Circuit Court of Appeals has recognized, "'[t]he charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown to have been fraudulent.'" *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380-81 (8th Cir. 2008) (quoting *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988)). A plaintiff can reasonably believe that adverse employment action is based on more than one protected characteristic or is the result of discrimination *or* harassment *or* retaliation, and the defendants have not identified anything providing a whiff of fraudulence about Crumrine's various claims. There is also no prohibition on pleading multiple, alternative, or even inconsistent claims under anti-discrimination statutes, where the alternatives do not necessarily defeat a specific claim. *See Montgomery v. John Deere & Co.*, 169 F.3d 556, 563 (8th Cir. 1999). A plaintiff may also reasonably decide to focus on only one of several possible causes of action, for any of a number of reasons not actually related to the merits of any one claim—such as statute of limitations issues, technical difficulties with proof or complexity, or even litigation strategy to simplify and streamline a case for the jury, where damages on alternative claims would be essentially identical or overlapping. Requiring a plaintiff to present explanations for such decisions might improperly compel revelation of litigation strategy or other privileged information or result in an unnecessary and confusing "mini-trial." FED. R. EVID. 403 (identifying grounds for exclusion of probative evidence as including confusion of the issues).

The defendants are correct that the fact that Crumrine believed that she had been subjected to harassment and discrimination because of sex and pregnancy will

"inevitably" come out at trial. That is not the same, however, as submission of evidence that Crumrine brought, then dismissed, such claims in this case.

The part of Crumrine's Motion In Limine seeking exclusion of "[e]vidence or argument regarding the fact that [she] initially brought additional legal claims against Defendants" is granted.

### b. The substance of the dismissed claims

The defendants seek an order excluding evidence of, testimony about, and reference to the substance of Crumrine's dismissed claims. The defendants argue that Crimrine should not be allowed to present evidence of her underlying sexual harassment complaint or the details of any other claim that has now been dismissed, because such evidence lacks probative value, would unfairly prejudice them, and would mislead the jury. The defendants also argue that facts about Crumrine's pregnancy, differential pay, or environmental safety claims, details about her health and disability conditions and treatments, or other background information underlying purported complaints of discrimination would do nothing but inflame and evoke passions of the jurors, rather than serve as proof of protected activity or retaliation. More specifically, the defendants argue that charges of sexual harassment are not like or reasonably related to retaliation charges and that details about an underlying complaint are not relevant, when only a retaliation claim remains. All the jury needs to know, they contend, is that the plaintiff claimed she had been sexually harassed, not a "blow-by-blow account" of the alleged harassment. They argue that the seriousness of the harassment does not make retaliation more likely, but evidence of the nature of the harassment creates a risk of unfair prejudice, because the jury might grant relief on the basis of the harassment, not on the basis of the retaliation.

Crumrine responds that evidence about alleged sexual harassment and sex discrimination should be admitted, but acknowledges that evidence about her dismissed

public policy, disability discrimination, blacklisting, and Equal Pay Act claims would be irrelevant and inadmissible. As to evidence of the alleged sexual harassment and sex discrimination, Crumrine argues that such evidence will show that she reasonably believed that she was complaining about unlawful conduct, which is an element of her retaliation claim. She also argues that the nature of the underlying conduct is relevant to whether the defendants' actions were taken with retaliatory intent. Specifically, she argues that complaints about minor incidents are less likely to provoke retaliation than complaints about incidents of harassment that were serious or part of a larger course of harassment, because the latter are more likely to threaten the continued employment of the bad actor. Moreover, she argues, retaliation in the context of a course of other harassment or discrimination is also more likely to cause the plaintiff emotional distress.

In reply, the defendants argue that courts routinely allow stipulations that the underlying allegations were made in good faith in order to avoid a mini-trial about and the potential prejudice from details about those complaints in the trial of a retaliation claim. They reiterate their contention that the severity of the underlying harassment or discrimination does nothing to prove a retaliation claim.

As the defendants point out, in *Easley v. American Greetings Corp.*, 158 F.3d 974 (8th Cir. 1999), the Eighth Circuit Court of Appeals upheld exclusion of underlying evidence of harassment in a retaliation case, for the following reasons:

> We conclude it was not an abuse of discretion to exclude testimony concerning the specific acts of Ward's harassment on a finding that the danger of unfair prejudice substantially outweighed the probative value of such evidence. The proffered evidence had little probative value, because the severity of harassment would not make it more or less likely for an employer to retaliate against an employee who had complained. The serious nature of the harassment, however, created a risk of unfair prejudice against American Greetings, despite the company's prompt investigation of

16

Easley's complaint and termination of Ward's employment. Such testimony also would encourage the jury to grant the plaintiff relief on the grounds she had suffered from Ward's conduct, not because she had shown her discharge was retaliation for complaining about Ward's actions.

*Easley*, 158 F.3d at 976.

This conclusion must contrasted with that of the Eighth Circuit Court of Appeals in *Hawkins v. Hennepin Technical Center*, 900 F.2d 153 (8th Cir. 1990), on which Crumrine relies:

> [I]t is not sufficient that the Magistrate allowed testimony that complaints of sexual harassment were made while disallowing testimony concerning the activities complained of and the Center's disposition of the complaints. Hawkins's claim is unlawful retaliation. But an atmosphere of condoned sexual harassment in a workplace increases the likelihood of retaliation for complaints in individual cases. Hawkins is entitled to present evidence of such an atmosphere.

*Hawkins*, 900 F.2d at 156 (footnote omitted). The court in *Hawkins* also warned against "blanket" evidentiary exclusions in employment discrimination cases, where plaintiffs must persuade a jury to disbelieve an employer's account of its own motives. *id.* at 155. For the same reasons, a "blanket" evidentiary exclusion is inappropriate in a retaliation case.

More recently, some other federal Circuit Court of Appeals have recognized that evidence of prior discrimination is probative of and admissible on the questions of the good faith and reasonableness of the employee's belief that she has been harassed and on an employer's *retaliatory* intent. *See, e.g., Buckley v. Mukasey*, 538 F.3d 306, 318-20 (4th Cir. 2008) (holding that the plaintiff could offer evidence of prior discrimination litigation to show *retaliatory* animus in her subsequent retaliation lawsuit, because it showed that the prior litigation "weighed heavily on the minds of the principle decision-

makers" in her case, and because retaliation claims are "inextricably linked to past acts of discrimination" and "speak[] directly to the defendant's motive and intent to retaliate," and noting that a limiting instruction could be utilized to caution the jury that evidence of prior discrimination is to be considered only as evidence of retaliatory animus); *Fine v. Ryan Internat'l Airlines*, 305 F.3d 746, 754 (7th Cir. 2002) ("This court has previously found that evidence of underlying sexual harassment is relevant on a retaliation claim to establish that a plaintiff 'reasonably believed in good faith that the practice she opposed violated Title VII.'" (quoting *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 874 (7th Cir. 1995)).

The defendants are correct that, in the context of administrative exhaustion, a retaliation claim is not like or reasonably related to an underlying discrimination claim. *See Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 852 (8th Cir. 2012). That is not to say, however, that underlying harassment or discrimination is *irrelevant* to proof of a retaliation claim. *See* FED. R. EVID. 401. Indeed, a retaliation claim cannot be proved without proof that the plaintiff made an underlying complaint of harassment or discrimination and that the plaintiff reasonably and in good faith believed that he or she was harassed or discriminated against, to boot! *Cf. Buckley*, 538 F.3d at 319 (observing that retaliation claims are "inextricably linked to past acts of discrimination" and "speak[] directly to the defendant's motive and intent to retaliate"). I agree with the court in *Hawkins* that *properly circumscribed evidence* of prior harassment or discrimination, including its nature, severity, and frequency, is probative and admissible to prove *retaliatory* animus, because "an atmosphere of condoned sexual harassment in a workplace increases the likelihood of retaliation for complaints in individual cases." *Hawkins*, 900 F.2d at 156; *accord Buckley*, 538 F.3d at 318-20 (permitting the use of evidence of extensive prior discrimination litigation to prove *retaliatory* animus). Such *properly circumscribed evidence* also will not tip the balance against admission on the

grounds of unfair prejudice, in part, because it provides the context or *res gestae* of the retaliation claim. *See* FED. R. EVID. 403 and 404; *cf. United States v. Fleck*, 413 F.3d 883, 890 (8th Cir. 2005) (criminal case explaining that evidence is *res gestae* if it shows the "context" of the charged offense); *Buckley*, 538 F.3d at 319 (explaining that retaliation claims are "inextricably linked to past acts of discrimination" and "speak[] directly to the defendant's motive and intent to retaliate").

The decision in *Hawkins* does not stand alone against "blanket" exclusions of evidence in employment discrimination and retaliation cases. *See, e.g., Jenson v. Eveleth Taconite Co.*, 130 F.3d 1267, 1298 (8th Cir. 1997) ("This court has cautioned that 'blanket evidentiary exclusions can be especially damaging in employment discrimination cases.'" (quoting *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1103 (8th Cir. 1988)). Yet, it appears that the court in *Easley* applied such a "blanket" exclusion when it stated a categorical position that "the severity of harassment would not make it more or less likely for an employer to retaliate against an employee who had complained." *Easley*, 158 F.3d at 976. I find that conclusion contrary to common sense: While humans are not immune to overreaction to trivial slights, they are certainly more likely to take retaliatory action for accusations that they believe seriously threaten them or their livelihoods. *Cf. Ludlow*, 788 F.3d at 802 (applying Title VII standards to a claim under a state fair employment practices act and finding "strong evidence" that the alleged retaliators "harbored retaliatory animus against [the plaintiff] for triggering and pursuing a forgery investigation that shed negative light on the [plaintiff's] department and could cost [one of the harasser's] his job"). Common sense also suggests that the more pervasive harassment or discrimination are, the more likely it is that harassers will retaliate against complainants, because they will believe that they can do so with impunity. *Hawkins*, 900 F.2d at 156.

Finally, the court in *Easley* affirmed exclusion of testimony concerning the specific acts of harassment in the trial of a retaliation claim, apparently without consideration, by either the district court or the appellate court, of the effectiveness of limiting the evidence in question or a limiting instruction. *Cf. Lemon*, 239 F.3d at 972 (recognizing that limiting the amount of evidence, while excluding evidence that might prejudicially divert the jury's attention from matters properly at issue, may limit prejudice); *Valadez*, 758 F.3d at 982 ("To the extent [the parties] were concerned about improper prejudice, a limiting instruction would have addressed those concerns." (citing FED. R. EVID. 105)); *Buckley*, 538 F.3d at 320 (noting that a limiting instruction could be utilized to caution the jury that evidence of prior discrimination is to be considered only as evidence of retaliatory animus). I believe that such measures are adequate, here, to prevent unfair prejudice.

Thus, the part of the defendants' Motions In Limine (No. 1) seeking exclusion of evidence of the substance of Crumrine's dismissed claims is granted in part, but denied in part. While I will exclude evidence about Crumrine's dismissed claims based on public policy, disability discrimination, blacklisting, and the Equal Pay Act, which she concedes would be irrelevant and inadmissible, I will not raise a blanket exclusion to her evidence of harassment and discrimination based on sex or gender. Nevertheless, there will be limits on evidence of harassment and discrimination based on sex or gender. I believe that it will be sufficient for Crumrine, alone, to give a summary—but not a blow-by-blow narrative—of the nature and frequency of the alleged harassment, which she need not bolster with other evidence or testimony, unless her summary is challenged by the defendants. I also believe that any *unfair* prejudice arising from such evidence can be eliminated with a limiting instruction as to the proper uses of such evidence to attempt to prove that Crumrine's complaints of harassment or discrimination were in good faith and reasonable and to attempt to prove the defendants' *retaliatory* animus.

### 2.     *Offers of settlement*

The only other category of evidence that Crumrine seeks to exclude in her Motion In Limine is offers of settlement and/or statements made in settlement negotiations, pursuant to Federal Rules of Evidence 408. Although the defendants point out that Crumrine has not identified any particular evidence that should be excluded pursuant to Rule 408, they concede that, to the extent her motion seeks only to bar evidence or testimony clearly prohibited by Rule 408 of the Federal Rules of Evidence, they do not resist the motion. Thus, this part of Crumrine's Motion In Limine is granted as undisputed. Whether specific evidence is "clearly" prohibited by Rule 408, however, may not be resolvable until trial. Identification prior to trial of specific evidence that may violate Rule 408 that either party intends to offer at trial would be appreciated.

### 3.     *Injuries from pre-retaliation conduct*

The second category of evidence challenged by the defendants is evidence regarding Crumrine's personal injury, mental health condition, or emotional distress purportedly caused by work matters prior to the alleged retaliation. The defendants argue that, because the trial will concern only Crumrine's retaliation claim, evidence regarding her mental state or any injury incurred prior to the alleged retaliatory discharge is irrelevant and would only mislead the jury. Crumrine responds that she agrees that she cannot recover emotional distress damages for emotional harm caused solely by any of the harassment or discrimination she experienced during her employment with defendants, and does not intend to offer evidence of that emotional harm. She points out, however, that the defendants' "campaign of retaliation" began right away after she returned from maternity leave in July 2013 and continued until she was fired in October 2013. She also contends that it will be necessary to offer some evidence of her personality and mental health condition prior to the retaliation to provide a useful "baseline" by

which to judge the changes that followed as a result of the retaliation. The defendants offer no reply on this part of their Motions In Limine.

I agree with the parties that evidence of Crumrine's personal injury, mental health condition, or emotional distress purportedly caused by work matters prior to the alleged retaliation is more prejudicial than probative, *see* FED. R. EVID. 403, but I also agree with Crumrine that some evidence of her mental condition prior to the alleged retaliation is relevant to establish a "baseline" for her claims of subsequent injury. Thus, this is an instance in which a limiting instruction on the proper basis for any damages award and the proper use of evidence of Crumrine's mental condition prior to the retaliation is appropriate to eliminate potential prejudice. *Valadez*, 758 F.3d at 982; FED. R. EVID. 105. With these caveats, this part of the defendants' Motions In Limine (No. 2) is granted.

### 4. *Lay testimony on emotional distress*

The third category of evidence that the defendants seek to exclude is testimony by lay witnesses referencing, opining, or speculating about the cause or degree of Crumrine's personal injury, mental health, or emotional distress. The defendants argue that such testimony is not from qualified experts and is not based on personal knowledge, but on speculation and hearsay, so that it should be excluded pursuant to Rules 403, 602, and 701. Somewhat more specifically, they argue that lay testimony on the diagnosis, severity, or cause of Crumrine's emotional health, derived solely from the witness's untrained opinions and personal beliefs, certainly cannot meet *Daubert* standards and is inadmissible, and that causation evidence would require expert testimony, which Crumrine has not designated. The defendants argue that the probative value of any lay testimony on these issues is slight, such that it is outweighed by the probability that it will waste time, confuse the issues, and mislead the jury. Crumrine contends, however, that courts in the Eighth Circuit have routinely allowed lay testimony by relatives,

friends, and co-workers about a plaintiff's emotional distress. She argues that a lay witness can properly testify from observations that a person appeared to be in pain, so that the issue is the weight to be given the testimony, a matter for the jury, not the admissibility of the testimony, which would be for the court. She explains that she intends to offer testimony from her husband, John Breder, her friends, Kandi Quandt and Virginia Tuel, and her sister, Jessica Crumrine, all of whom know her well and can offer valuable insights into what changes they observed in her personality, demeanor, and emotional disposition after the retaliation at issue in this case.

I conclude that the defendants simply go too far when they assert that only expert testimony is competent and admissible on mental health or emotional distress from employment discrimination or retaliation. As the Eighth Circuit Court of Appeals explained some time ago,

> "Compensatory 'damages for emotional distress must be supported by competent evidence of "genuine injury.""" *Foster v. Time Warner Entm't Co.*, 250 F.3d 1189, 1196 (8th Cir. 2001) (quoting *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 531 (8th Cir.1999)). To prove emotional distress in relation to his ADA claim, Webner was not required to present medical or other expert evidence. *See Kim v. Nash Finch Co.*, 123 F.3d 1046, 1065 (8th Cir.1997). Instead, "[a] plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard." *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 893 (8th Cir.2000) (internal quotations omitted). Webner was obligated to offer specific facts as to the nature of his claimed emotional distress and the causal connection to Titan's alleged violations. *See Browning v. President Riverboat Casino–Missouri, Inc.*, 139 F.3d 631, 636 (8th Cir.1998).

*Webner v. Titan Distrib., Inc.*, 267 F.3d 828, 836 (8th Cir. 2001); *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 893 (8th Cir. 2000) (whistle-blower case stating, "To prove emotional distress, medical or other expert evidence is not required." (citing *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1065 (8th Cir. 1997)). What the Federal Rules of Evidence require for a lay opinion to be admissible is that the opinion be "rationally based on the witness's perception," "helpful to clearly understand the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge." FED. R. EVID. 701.

The Eighth Circuit Court of Appeals has repeatedly recognized that testimony of the plaintiff and the plaintiff's family members, and presumably others who knew the plaintiff well, about the plaintiff's emotional distress from an employer's discriminatory or retaliatory conduct, when based upon sufficient observation, is sufficient to support emotional distress damages. *See Christensen v. Titan Distrib., Inc.*, 481 F.3d 1085, 1097 (8th Cir. 2007) (holding that a plaintiff's and his wife's testimony was sufficient to justify an award of emotional distress damages, citing *Webner*, 267 F.3d at 836); *Eich v. Board of Regents for Cent. Missouri State Univ.*, 350 F.3d 752, 763-64 (8th Cir. 2003) (upholding jury award of emotional distress damages in a Title VII case based on plaintiff's testimony about how demeaning and humiliating the abusive conduct of the harassers against her had been); *Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190 (8th Cir. 2000) (finding sufficient the testimony from the plaintiff and his spouse regarding the plaintiff's loss of dignity and self-esteem, along with feeling of emptiness, to sustain a compensatory damages award for emotional distress under the FMLA); *see also Townsend v. Bayer Corp.*, 774 F.3d 446, 466-67 (8th Cir. 2014) (although the plaintiff's and his wife's testimony about his emotional distress, shame, and embarrassment from his termination did not justify a jury award of $568,000 for

emotional distress, his "garden-variety evidence of emotional distress" did justify an award no greater than $300,000).

This part of the defendants' Motions In Limine (No. 3) is denied.

### 5. *Evidence of corporate status*

The penultimate evidentiary issue is the defendants' challenge to evidence of or references to certain corporate status and business information about Dow and AgriGenetics, consisting of the following: the state of incorporation of these defendants; their respective existence as a foreign or domestic corporations; their respective relationship as a parent or subsidiary entity; their respective size in revenues, profits, or numbers of employees; and use of descriptors such as "conglomerate," "impersonal corporation," "large employer," or similar terms are not relevant to any material issue of fact serving only to highlight their corporate status. The corporate defendants argue that they are entitled to the same fair treatment as an individual party to this litigation. They also argue that the type of corporate information that they challenge is more prejudicial than probative, if it is relevant at all, pursuant to Rules 403 and 402 of the Federal Rules of Evidence. They argue that this court should also proscribe undue references to their corporate status so that any limiting instructions on corporate status will remain preventive, rather than curative. Crumrine argues that, because she seeks punitive damages, it will be necessary and permissible for her to present evidence of the corporate defendants' size in revenues, profits, and number of employees. Although she will agree not to refer to the corporate defendants as "conglomerates" or "impersonal" corporations, Crumrine argues that references to the defendants as corporations and large employers would be accurate, relevant, and admissible. In reply, the corporate defendants argue that, before Crumrine is allowed to present evidence of the corporate defendants' financial condition, the jury must first determine that the defendants acted

with malice or reckless indifference and that Crumrine would be eligible for punitive damages.

To the extent that the defendants seek some sort of bifurcation of proceedings on punitive damages, requiring a jury finding of malice before Crumrine can present evidence of the corporations' financial condition, that request is denied. Such a procedure would be unwieldy, time-consuming, and unnecessary. Crumrine is correct that some evidence of a corporate defendants' wealth or financial condition is relevant to the question of the proper amount of punitive damages, if any, to award. *See, e.g., Carter v. Kansas City Southern Ry. Co.*, 456 F.3d 841, 846 (8th Cir. 2006) ("[F]actors to be considered in an award of punitive damages [include] the defendant's financial status."). The potential for prejudice presented by otherwise permissible evidence of corporate status, wealth, or financial condition is clearly one that can be eliminated by a limiting instruction on the fair treatment of corporations and the proper uses of the permissible evidence in the determination of punitive damages. *Valadez*, 758 F.3d at 982; FED. R. EVID. 105. Moreover, the submission of punitive damages to the jury can be revisited before the case is submitted to the jury, and if I am convinced that no sufficient evidence has been submitted, I can withdraw punitive damages from the jury's consideration. Indeed, during trial, I will require Crumrine to seek leave, outside the presence of the jury, to present relevant evidence of corporate status, wealth, or financial condition. If I determine that she has not already presented sufficient evidence to raise a jury question on punitive damages, I will not allow her to present evidence of corporate status, wealth, or financial condition. I strongly encourage the parties to attempt to reach a stipulation about what information about corporate status, wealth, or financial condition is relevant, if Crumrine does present sufficient evidence to raise a jury question on punitive damages.

A closer question is presented by the potential for prejudice from characterizations of the corporate defendants as "conglomerates," or "impersonal," or similar potentially

derogatory or negative terms intended to skew the jurors' perception of the corporate defendants from the fair treatment that they are required to be given by law. *See* FED. R. EVID. 403, Advisory Committee Notes (explaining that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one"); *see also United States v. Bell*, 761 F.3d 900, 912 (8th Cir. 2014). Crumrine has undertaken to avoid using such terms, and I conclude that the best approach to the *potential* problem is the use of caution, good judgment, and vigilance by the court and the parties, not a pretrial ban on certain words that could prove inadequate or overbroad.

This part of the defendants' Motions In Limine (No. 4) is denied, but the parties are cautioned to recognize and avoid the potential problem of using characterizations as substitutes for admissible evidence.

### 6.    *Evidence from administrative proceedings*

The last evidentiary issue is the defendants' challenge to evidence from Crumrine's Iowa Civil Rights Commission (ICRC), Equal Opportunity Employment Commission (EEOC), and/or Iowa Workforce Development (IWD) administrative files and proceedings. The defendants contend that there is little probative value in the agencies' conclusory statements regarding the complaint information and agency analysis or screening determinations and that admission of records or testimony about them would amount to admitting the opinion of an expert witness as to what conclusions the jury should draw, even though the jury had the opportunity and ability to draw its own conclusions. Even if such documents have some marginal relevance, the defendants contend that the prejudicial effect of the reports would greatly outweigh any probative value they may have. They point out that IOWA CODE § 96.11(6)(b)(3) makes IWD information privileged and inadmissible. Finally, the defendants contend that the agencies' records contain inadmissible hearsay. Crumrine agrees that the ICRC Screening Data Analysis and Case Determination as well as any EEOC counterparts are

inadmissible under Rule 403. On the other hand, she contends that the agencies' files may contain relevant and admissible documents, such as the defendants' response to the ICRC questionnaire, which may be used for impeachment or as an admission of a party opponent. Thus, she contends that determination on the admissibility of documents from agency files should be made at the time of trial.

Crumrine makes a valid distinction between the admissibility of administrative findings and conclusions, on the one hand, and the admissibility of admissions and other information found in administrative records, on the other. I have recognized,

> [I]n the context of employment discrimination cases, the question of whether to admit or exclude evidence of administrative findings, investigations, action, or inaction, is within the sound discretion of the court. *See BoDeans Cone Co., L.L.C. v. Norse Dairy Sys., L.L.C.*, 678 F.Supp.2d 883, 897 (N.D.Iowa 2009) (citing *Phan v. Trinity Regional Hosp.*, 3 F.Supp.2d 1014, 1017 (N.D.Iowa 1987)). "More specifically, the court must ensure that unfair prejudice does not result from a conclusion based on a cursory [administrative] review of the very facts examined in depth at trial." *Id.* (internal quotation marks and citations omitted). I observed that "the same concern with unfair prejudice from admitting evidence about action or inaction of a state or federal enforcement agency, based on the agency's cursory investigation or review of facts examined in depth at a civil trial, is likely to arise in a case involving alleged antitrust violations." *Id.* I added that, "[b]efore undertaking such a 'prejudice' analysis, pursuant to Rule 403, however, the court ... should also consider the probative value of the evidence in question." *Id.* (citing Fed.R.Evid. 401 & 402). I find that the same concerns are presented here, even though the administrative proceedings at issue here involved neither employment discrimination nor violation of antitrust regulations, but unemployment compensation.

*Minten v. Weber*, No. C11–4004–MWB, 2012 WL 7861462, *6 (N.D. Iowa Jan. 26, 2012) (First Amendment retaliation case).

I have also recognized,

> [T]the probative value, if any, of evidence of the *outcome, findings, or conclusions* of the administrative proceedings . . . is substantially outweighed by its potential for prejudice and confusion and the possibility (or probability) that introduction of that evidence will allow trial . . . to devolve into a 'mini-trial' on the issues in and the reliability of the findings and conclusions in the administrative proceedings.

*Minten*, 2012 WL 7861462 at *7. Furthermore,

> [A]dmission of the administrative conclusions may improperly lead the jurors to believe that determinations . . . have already been made, and that they need not make an independent determination based on the evidence relating to [issues] presented to them.

*Minten*, 2012 WL 7861462 at *7. On the other hand, I also recognized that a party's *admissions in administrative proceedings* may be admissible, but should only be identified as statements "in other proceedings." *Id.*

Thus, the fact that some document or information was in an agency's file is not what makes it admissible or inadmissible, which seems to be the defendants' position. Rather, the admissibility of the information or document itself—distinct from its presence in the agency's files—may be determinative. Again, any potential prejudice from any apparent imprimatur of authority or reliability that might arise from the fact that an otherwise admissible statement was made in administrative proceedings or that any otherwise admissible document was found in administrative files or was made for purposes of administrative proceedings can be eliminated by identifying the administrative proceedings simply as "other proceedings." *Id.* However, to give me an

adequate opportunity to determine whether any particular documents or statements from agency files or administrative proceedings are admissible, Crumrine must provide me with a list and copies of such evidence that she anticipates using at trial not later than August 24, 2016.

This part of the defendants' Motions In Limine (No. 5) is denied without prejudice to challenges to specific items of evidence on hearsay or other grounds.

## III.  CONCLUSION

Upon the foregoing, and as explained more fully, above,

1.     The defendants' July 19, 2016, Resisted Motions In Limine Nos. 1, 2, 3, 4, and 5 (docket no. 52) is **granted in part and denied in part**, as follows:

a.     The defendants' Motion In Limine No. 1, seeking exclusion of evidence of the substance of Crumrine's dismissed claims, **is granted in part, but denied in part**;

b.     The defendants' Motion In Limine No. 2, seeking exclusion of evidence regarding Crumrine's personal injury, mental health condition, or emotional distress purportedly caused by work matters prior to the alleged retaliation, is **granted**;

c.     The defendants' Motion In Limine No. 3, seeking exclusion of testimony by lay witnesses referencing, opining, or speculating about the cause or degree of Crumrine's personal injury, mental health, or emotional distress, is **denied**;

d.     The defendants' Motion In Limine No. 4, seeking exclusion of evidence of or references to certain corporate status and business information about Dow and AgriGenetics, is **denied**; and

e.	The defendants' Motion In Limine No. 5, seeking exclusion of evidence from Crumrine's Iowa Civil Rights Commission (ICRC), Equal Opportunity Employment Commission (EEOC), and/or Iowa Workforce Development (IWD) administrative files and proceedings, is **denied** *without prejudice* to challenges to specific items of evidence on hearsay or other grounds, but Crumrine must provide me with a list and copies of such evidence that she anticipates using at trial not later than August 24, 2016.

2.	Crumrine's July 19, 2016, Motion In Limine (docket no. 53) is **granted.**

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about excluded evidence, this ruling shall be sealed until ten days after completion of trial or any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED**.

**DATED** this 10th day of August, 2016.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA